No. 24-13676

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

TARA MOORE,

*Plaintiff-Appellant*,

v.

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of Alabama
No. 7:24-cv-00322-LSC
Hon. L. Scott Coogler

**OPENING BRIEF OF PLAINTIFF-APPELLANT**

Jennifer A. Wedekind
**AMERICAN CIVIL LIBERTIES UNION**
**FOUNDATION**
915 15th Street NW
Washington, DC 20005
(202) 548-6610
jwedekind@aclu.org

Linda S. Morris*
*admitted to the State of Maryland*
**AMERICAN CIVIL LIBERTIES UNION**
**FOUNDATION**
125 Broad Street – 18th Floor
New York, NY 10004
(212) 549-2500
lindam1@aclu.org

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, Plaintiff-Appellant certifies that the following individuals and entities have or may have an interest in the outcome of this case or appeal:

1. American Civil Liberties Union Foundation, *Counsel for Plaintiff-Appellant*

2. Bailey, J. Evans, *Former Counsel for Plaintiff-Appellant*

3. Busch, Bryan E., *Former Counsel for Plaintiff-Appellant*

4. Busch, Mills & Slomka, LLP, *Former Counsel for Plaintiff-Appellant*

5. Coogler, Hon. L. Scott, *District Judge*

6. Costello, Sean P., *United States Attorney*

7. Heisterhagen, Timothy A., *Former Assistant United States Attorney*

8. Jones, Keith A., *Assistant United States Attorney*

9. Moore, Tara, *Plaintiff-Appellant*

10. Morris, Linda S., *Counsel for Plaintiff-Appellant*

11. Rushton, Stakely, Johnston & Garrett, P.A., *Former Counsel for Plaintiff-Appellant*

12. Victoria Todd, *Assistant United States Attorney*

13. United States of America, *Defendant-Appellee*

14. Wedekind, Jennifer A., *Counsel for Plaintiff-Appellant*

The American Civil Liberties Union Foundation is a non-profit entity that does not have a parent corporation. No publicly held corporation owns 10 percent or more of any stake or stock in the American Civil Liberties Union Foundation.

Dated: April 7, 2025

*/s/ Linda S. Morris*
Linda S. Morris
American Civil Liberties Union Foundation

*Attorney for Plaintiff-Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant respectfully requests oral argument. This appeal concerns complex and important legal issues concerning liability under the Federal Tort Claims Act arising out of sexual abuse committed by federal law enforcement officers, including Bureau of Prisons correctional officers. Plaintiff-Appellant believes that oral argument would assist the Court in deciding this matter.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
    DISCLOSURE STATEMENT ....................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF CONTENTS ......................................................................... ii

TABLE OF AUTHORITIES......................................................................iv

INTRODUCTION....................................................................................1

JURISDICTIONAL STATEMENT ..........................................................3

STATEMENT OF THE ISSUES ..............................................................3

STATEMENT OF THE CASE ..................................................................4

   I.  Statement of Facts..............................................................................4

   II. Prior Proceedings ...........................................................................7

STANDARD OF REVIEW.......................................................................8

SUMMARY OF THE ARGUMENT ........................................................8

ARGUMENT ........................................................................................12

  I.  The Court Has Subject Matter Jurisdiction Because Officer Smith
     Acted Within the Scope of Employment as a Federal Correctional
     Officer When He Relied on His Employer-Conferred Power and
     Authority to Rape, Sexually Abuse, and Harass Ms. Moore. ......................12

     A. The United States May Be Liable for Tortious Conduct of Law
        Enforcement Officers Acting in the Scope of Their Office or
        Employment....................................................................................12

        1. Whether Officer Smith's Sexual Abuse Was in the Scope of
           Employment is a Fact-Based Inquiry under Alabama State Law
           that is Improper to Resolve at the Motion to Dismiss Stage. .............14

2. Ms. Moore Has Alleged Facts Sufficient to Show that Officer Smith Acted Within the Scope of Employment by Using His Employer-Conferred Power and Authority as Federal Correctional Officer to Rape, Sexually Abuse, and Harass Ms. Moore. .................................................................................18

B. The District Court Erred by Holding that Sexual Assault is Per Se Outside the Scope of Employment Without Allowing a Fact-Finder to Consider the Underlying Facts in Accordance with Alabama Law. ......................................................................................22

II. The Court Has Subject Matter Jurisdiction Because the Federal Tort Claims Act Waives Sovereign Immunity for Ms. Moore's Negligence Claims .................................................................................26

A. The Bureau of Prisons Owes Independent Duties of Care to Ms. Moore and Other Incarcerated People. ....................................27

B. The Bureau of Prisons Independently Breached its Duties to Ms. Moore by Failing to Respond to Sexual Abuse and Retaliating Against Those Who Reported Abuse and Misconduct. ...........31

CONCLUSION ...........................................................................35

CERTIFICATE OF COMPLIANCE ..................................................36

CERTIFICATE OF SERVICE............................................................37

# TABLE OF AUTHORITIES

**Cases**

*Alvarez v. United States*,
862 F.3d 1297 (11th Cir. 2017)....................................................................33

*Am. Dental Ass'n v. Cigna Corp.*,
605 F.3d 1283 (11th Cir. 2010)......................................................................8

*Applewhite v. City of Baton Rouge*,
380 So. 2d 119 (La. Ct. App. 1979).........................................................17, 18

*Armstrong Bus. Servs., Inc. v. AmSouth Bank*,
817 So. 2d 665 (Ala. 2001)...........................................................................27

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................19

*Calif. Coal. for Women Prisoners v. United States*,
723 F. Supp. 3d 712 (N.D. Cal. 2024)  ........................................................31

*Cardenas v. United States*,
No. 4:23-CV-00745-P, 2023 WL 7634436 (N.D. Tex. Nov. 15, 2023) .......32

*Darrisaw v. Pa. Higher Educ. Assistance Agency*,
949 F.3d 1302 (11th Cir. 2020)......................................................................8

*Doe v. Swift*,
570 So. 2d 1209 (Ala. 1990)...................................................................23, 25

*E. Ala. Behav. Med., P.C. v. Chancey*,
883 So. 2d 162 (Ala. 2003)...........................................................................23

*Edwards v. Earnest*,
89 So. 729 (Ala. 1921)......................................................................10, 15, 23

*Florence v. Bd. of Chosen Freeholders of Burlington*,
566 U.S. 318 (2012)......................................................................................22

iv

*Hendley v. Springhill Mem'l Hosp.*,
575 So. 2d 547 (Ala. 1990) ....................................................................23, 24

*Herrera v. United States*,
No. 20-cv-10206 (PKC), 2022 WL 902090 (S.D.N.Y. Mar. 27, 2022) .......32

*Iriele v. Griffin*,
No. 7:20-CV-383-LSC, 2023 WL 8439743 (N.D. Ala. Dec. 5, 2023) .........28

*J.K.J. v. Polk Cnty.*,
960 F.3d 367 (7th Cir. 2020) .........................................................................21

*L.B. v. United States*,
515 P.3d 818 (Mont. 2022) ....................................................................17, 22

*L.B. v. United States*,
8 F.4th 868 (9th Cir. 2021) ....................................................................16, 17

*Lawler Mobile Homes, Inc. v. Tarver*,
492 So. 2d 297 (Ala. 1986) ..................................................14, 15, 16, 19

*Mary M. v. City of Los Angeles*,
814 P.2d 1341 (Cal. 1991) ...........................................................................18

*Millbrook v. United States*,
569 U.S. 50 (2013) ..................................................................................9, 13

*Moore v. United States*,
No. 7:24-cv-00322-LSC, 2024 WL 4453785 (N.D. Ala. Oct. 9, 2024) .........3

*Naber v. McCrory & Sumwalt Constr. Co.*,
393 So. 2d 973 (Ala. 1981) ....................................................................14, 15

*Patton v. Thompson*,
958 So. 2d 303 (Ala. 2006) ...........................................................................28

*Plaisance v. Yelder*,
408 So. 2d 136 (Ala. Civ. App. 1981) .........................................................16

*Potts v. BE & K Constr. Co.*,
604 So. 2d 398 (Ala. 1992) ............................................................14

*Prill v. Marrone*,
23 So. 3d 1 (Ala. 2009) ...........................................................11, 27

*Quail Cruises Ship Mgmt. Ltd. v. Agencia de Viagens CVC Tur Limitada*,
645 F.3d 1307 (11th Cir. 2011) ........................................................8

*Red Elk ex rel. Red Elk v. United States*,
62 F.3d 1102 (8th Cir. 1995) ...........................................................17

*Sheridan v. United States*,
487 U.S. 392 (1988) .......................................................................33

*Sinaltrainal v. Coca-Cola Co.*,
578 F.3d 1252 (11th Cir. 2009) ........................................................8

*Solmica of Gulf Coast, Inc. v. Braggs*,
232 So. 2d 638 (Ala. 1970) ............................................................15

*St. Louis-San Francisco Ry. Co. v. Robbins*,
123 So. 12 (Ala. 1929) ..............................................9, 15, 16, 20

*Terry v. Ohio*,
392 U.S. 1 (1968) ...........................................................................22

*U.S. Steel Co. v. Butler*,
69 So. 2d 685 (Ala. 1953) ..............................................................16

*United States v. Gaubert*,
499 U.S. 315 (1991) .......................................................................34

*United States v. Muniz*,
374 U.S. 150 (1963) ..................................................................11, 28

*United States v. Shearer*,
473 U.S. 52 (1985) .........................................................................33

*Williams v. Hughes Moving & Storage Co.*,
    578 So. 2d 1281 (Ala. 1991) ................................................................14, 15

*Zelaya v. United States*,
    781 F.3d 1315 (11th Cir. 2015)............................................................27, 34

**Statutes and Regulations**

18 U.S.C. § 4042 ......................................................................................11, 28

28 C.F.R. § 115 ........................................................................................11, 28

28 C.F.R. § 115.6 ..........................................................................................28

28 C.F.R. § 115.61 ........................................................................................29

28 C.F.R. § 115.62 ........................................................................................29

28 C.F.R. § 115.67 ........................................................................................30

28 C.F.R. § 115.76 ........................................................................................30

28 C.F.R. § 115.77 ........................................................................................30

28 C.F.R. § 115.78 ........................................................................................30

28 U.S.C. § 1291 .............................................................................................3

28 U.S.C. § 1331 .............................................................................................3

28 U.S.C. § 1346 ....................................................................................*passim*

28 U.S.C. § 2671 ....................................................................................*passim*

28 U.S.C. § 2680 ........................................................................................9, 12

34 U.S.C. § 30301 ........................................................................................11

34 U.S.C. § 30307 ........................................................................................28

42 U.S.C. § 15601 ..................................................................................*passim*

**Other Authorities**

Brenda Smith & Jaime Yarussi, *Breaking the Code of Silence: Corrections Officers' Handbook on Identifying and Addressing Sexual Misconduct* (2007) ........................................................................................................21

Federal Bureau of Prisons Program Statement 3420.11, *Standards of Employee Conduct* ................................................................................29, 30

Federal Bureau of Prisons,Program Statement 5324.12, *Sexually Abusive Behavior Prevention and Intervention Program* ..........................................29

Human Rights Watch, *All Too Familiar: Sexual Abuse of Women in U.S. State Prisons* (1996).......................................................................................21

Michelle VanNatta, *Conceptualizing and Stopping State Sexual Violence Against Incarcerated Women*, 37 Soc. Just. 27 (2010)................................21

**Rules**

Fed. R. App. P. 32 ......................................................................................................36

**INTRODUCTION**

While he was on duty, in uniform, and engaged in performing his duties as a federal correctional officer, Bureau of Prisons ("BOP") Officer Robert D. Smith used his employer-conferred authority and power to sexually harass, abuse, and rape Plaintiff-Appellant Tara Moore while she was in his custody and under his supervision at the Federal Correctional Institution in Aliceville, Alabama. Officer Smith was known to have engaged in sexually abusive and predatory behavior against other incarcerated women prior to the time he raped Ms. Moore. Yet BOP officials failed to report and meaningfully respond to that prior abuse, and instead permitted Officer Smith to continue having regular, direct, and unsupervised contact with Ms. Moore and other incarcerated women.

To perpetrate the sexual abuse, Officer Smith relied on his BOP-conferred law enforcement authority and power as a correctional officer to locate and escort Ms. Moore to his office and facility closets; access to and knowledge of the facilities and locations of security cameras to assault her; and access to Ms. Moore's personal records and information to threaten and coerce her. Moreover, Officer Smith's sexual abuse arose out of and was incidental to his duties as a federal correctional officer, including, but not limited to, his authority to detain, search, frisk, and even use nonconsensual and invasive physical contact, when necessary, against incarcerated people.

Ms. Moore brought this action against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* ("FTCA"). On a motion to dismiss, the district court ruled that sexual assault is categorically outside the scope of employment under Alabama state law, without conducting any analysis of the facts set forth in the complaint. The district court further held that, because Officer Smith's sexual abuse fell outside the scope of his employment, the FTCA broadly precluded liability for all of Ms. Moore's negligence claims, including those based on the independent breaches of duty by other BOP officials.

The district court clearly erred in rendering this broad and sweeping decision. As the Supreme Court of Alabama has long recognized, courts must engage in a case-by-case analysis in determining whether an employee acts in the scope of his employment for purposes of employer liability. Here, the district court failed entirely to consider any of the facts underlying Officer Smith's rape, abuse, and harassment, including the many ways in which his abuse arose from and was predicated upon his authority and power as a federal correctional officer. Because the scope-of-employment inquiry requires a fact-based analysis, the district court's dismissal on these grounds was particularly inappropriate at the motion to dismiss stage, without permitting the parties to develop the factual record through discovery. Moreover, the district court's imposition of a *per se* rule cannot be reconciled with the Alabama Supreme Court's precedent and would impose insurmountable barriers for survivors

of officer-committed sexual violence seeking relief under the FTCA.

When federal law enforcement officers abuse their employer-conferred authority and power to assault those in their custody and under their supervision, such conduct falls well within the scope of their employment. And when federal correctional officials independently breach their mandatory duties of care to report and meaningfully respond to sexual abuse, such conduct is actionable under the FTCA. Accordingly, Ms. Moore asks this Court to reverse the district court's decision and remand for further proceedings on the merits.

## JURISDICTIONAL STATEMENT

This matter involves an appeal from the district court's dismissal of Plaintiff-Appellant's complaint in *Moore v. United States*, No. 7:24-cv-00322-LSC, 2024 WL 4453785 (N.D. Ala. Oct. 9, 2024). The district court had subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346. Plaintiff-Appellant timely filed a notice of appeal on November 7, 2024. This Court has jurisdiction over the appeal under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the district court erred in dismissing Ms. Moore's claims under the FTCA and holding that officer-committed sexual assault categorically falls outside the scope of employment, when Alabama state law requires a fact-intensive, case-specific determination, and the facts set forth in the complaint demonstrate that

Officer Smith relied on his position and authority as a correctional officer, within the uniquely coercive environment of a women's prison, to rape, sexually abuse, and harass Ms. Moore.

2. Whether the district court erred in holding that the FTCA precluded liability for negligence claims arising from BOP officials' independent breaches of their mandatory statutory duties to report and meaningfully respond to sexual abuse in correctional facilities, and to prevent retaliation against those who report sexual abuse, which enabled and led to Officer Smith's rape, sexual abuse, and harassment of Ms. Moore.

## STATEMENT OF THE CASE

## I.     Statement of Facts

Plaintiff-Appellant Tara Moore was taken into the custody of the BOP and incarcerated at the Federal Correctional Institution in Aliceville, Alabama ("FCIA") in 2015. Doc. 1, at 1–2, 13.[1] In 2018, Ms. Moore was assigned to work in the maintenance department under the supervision and management of BOP Officer Robert D. Smith. *Id.* at 13. Soon after, Officer Smith began to abuse his position and authority to intimidate and sexually harass Ms. Moore, including by making sexually explicit comments to her while she was under his supervision and in his custody. *Id.*;

---

[1] All citations refer to the document number and the page number(s) generated by the district court's electronic filing system.

4

*see also* Doc. 1-1, at 3–4. His abusive conduct rapidly escalated, as he used his federal law enforcement power and authority, as well as his access to and knowledge of FCIA's facilities and placement of security cameras, to sexually abuse Ms. Moore. Doc. 1, at 13; *see also* Doc. 1-2, at 3–4. In early 2019, Officer Smith located and forcibly escorted Ms. Moore into his office in the maintenance department and raped her. *Id.* Officer Smith's sexual abuse continued until Ms. Moore was transferred to another federal facility in Florida. Doc. 1, at 13.

In 2021, Ms. Moore was transferred back to FCIA and again placed under the supervision and management of Officer Smith. *Id.*; *see also* Doc. 1-1, at 4. During the summer of 2021, Officer Smith repeatedly sexually harassed and assaulted Ms. Moore while she was in his custody, relying on his employer-conferred power and authority as a federal correctional officer to perpetrate the abuse. *Id.* Officer Smith, for example, relied on his access to Ms. Moore's personal information and records, telephone call records, and emails as additional means to threaten, intimidate, and coerce Ms. Moore and to discourage her from reporting the sexual abuse to other prison staff. Doc. 1, at 12–13; *see also* Doc. 1-1, at 2–4. He also again used his law enforcement authority to locate Ms. Moore on FCIA property, escort her to various facility closets, and sexually assault her while she was in his custody and under his supervision. Doc. 1, at 13; *see also* Doc. 1-1, at 4.

BOP officials knew Officer Smith was engaged in a pattern of sexually abusive and predatory conduct at FCIA. Doc. 1, at 12–13, 15–16. Prior to his assault of Ms. Moore, Officer Smith had been reported and investigated for the sexual abuse and harassment of other women incarcerated at FCIA, including the rape of another woman known as R.R.L. as early as July 2018. *Id.*; *see also* Doc. 1-2, at 3–4. BOP officials must comply with the mandatory duties set forth in BOP policies and the Prison Rape Elimination Act, 42 U.S.C. § 15601 *et seq.* ("PREA"). Doc. 1, at 6–11. Specifically, BOP officials have mandatory duties to report and meaningfully respond to allegations of sexual abuse and harassment, and to protect against retaliation against those who report sexual abuse and harassment. *Id.* at 6–11, 14–16. Despite these mandatory duties and their awareness of Officer Smith's history of sexual harassment and abuse in his capacity as a correctional officer, BOP officials failed to restrict or supervise his interactions with Ms. Moore. *Id.* at 12–13, 15.

BOP officials at FCIA also instituted and maintained a policy and/or practice of ignoring, retaliating against, and otherwise punishing incarcerated women who reported abuse and harassment by prison staff. *Id.* at 4–6, 12, 15–16. Such retaliation included, but was not limited to, transfer to different and higher-security facilities, disciplinary segregation (such as segregation in Special Housing Units), detrimental disciplinary write-ups, loss of early release rights, loss of work privileges, and

interference with educational and vocational skills programs. *Id.* As a result of the rape, sexual abuse, and harassment that she endured while incarcerated at FCIA, Ms. Moore has suffered and continues to suffer significant psychological and physical trauma, depression, pain, and suffering. *Id.* at 14, 16–17; *see also* Doc. 1-1, at 4.

In January 2024, Officer Smith pleaded guilty to sexually abusing and raping Ms. Moore while she was under his supervision and in his custody at FCIA. Doc. 1, at 2; *see also* Doc. 1-2, at 2–16.

## II. Prior Proceedings

Ms. Moore provided BOP with notice of her claims for negligence, assault, battery, false imprisonment, and intentional infliction of emotional distress under the FTCA, in May of 2023. Doc. 1-1, at 2–6. On March 13, 2024, Ms. Moore filed this action against the United States. A2; *see also* Doc. 1, at 1–18.

The United States moved to dismiss for lack of subject matter jurisdiction. A2; *see also* Doc. 10, at 1–16. The district court granted the motion and dismissed Ms. Moore's claims. Doc. 17, at 1–12. In doing so, the district court held—without conducting any analysis of the underlying facts set forth in the complaint—that Officer Smith's rape, sexual abuse, and harassment fell outside the scope of his employment as a matter of law. *Id.* at 4–6. The district court further held that the FTCA precluded all of Ms. Moore's negligence claims involving the action or

inaction of other BOP officials, finding that they all arose from Officer Smith's sexual abuse and harassment. *Id.* at 7–11.

The district court entered final judgment on October 9, 2024, A3, and Ms. Moore timely filed a Notice of Appeal on November 7, 2024, *id.*

## STANDARD OF REVIEW

This Court reviews *de novo* the grant of a motion to dismiss for lack of subject matter jurisdiction. *Quail Cruises Ship Mgmt. Ltd. v. Agencia de Viagens CVC Tur Limitada*, 645 F.3d 1307, 1308 n.1 (11th Cir. 2011) (per curiam) (citing *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009)). The Court must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Darrisaw v. Pa. Higher Educ. Assistance Agency*, 949 F.3d 1302, 1303 (11th Cir. 2020) (citing *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010)).

## SUMMARY OF THE ARGUMENT

It is undisputed that Officer Smith raped and sexually abused Ms. Moore over the course of several years while she was in his custody and under his supervision at FCIA. The sexual abuse occurred while Officer Smith was engaged in his duties as a correctional officer and was enabled by that position of power and authority. BOP officials knew that Officer Smith had previously sexually abused other women, and they had mandatory, statutory duties of care to meaningfully respond to reports of

sexual abuse. Yet BOP officials took no action to separate Officer Smith from the incarcerated population or mitigate the risk that he would rape again. The district court therefore erred when it dismissed all of Ms. Moore's claims under the FTCA.

*First*, Officer Smith acted in the scope of his employment as a BOP correctional officer when he relied on his employer-conferred power and authority to sexually abuse Ms. Moore while she was in his custody and under his supervision. Under the FTCA's law enforcement proviso, the United States may be liable for certain intentional torts—including sexual assault—committed by federal law enforcement officers while acting within the scope of their office or employment. 28 U.S.C. §§ 1346(b), 2680(h); *see also Millbrook v. United States*, 569 U.S. 50, 54–55 (2013). Whether Officer Smith acted in the scope of his employment is controlled by Alabama state law, *see* 28 U.S.C. § 1346(b), which requires a case-by-case analysis based on the facts and circumstances surrounding the tortious conduct. *See, e.g.*, *St. Louis-San Francisco Ry. Co. v. Robbins*, 123 So. 12, 13 (Ala. 1929).

Here, every step that Officer Smith took to abuse Ms. Moore arose from and was predicated on his law enforcement authority, purpose, and duties. Officer Smith committed the rape, sexual abuse, and harassment exclusively on federal property, during work hours, against an incarcerated woman in his custody and under his supervision, and while he was uniformed, on duty, and engaged in his duties and purpose as a BOP officer. Doc. 1, at 12–13; *see also* Doc. 1-1, at 3–4; Doc. 1-2, at

3–4. He relied on his authority, knowledge, and access as a correctional officer to locate and escort Ms. Moore to his office and other locations away from security cameras, and to threaten and coerce Ms. Moore based on his authority and access to her personal records. *Id.* Moreover, his sexual abuse extended from and was incidental to his duties as a correctional officer, including the power of officers to use nonconsensual and even invasive physical contact against incarcerated people in carrying out their duties.

The district court erred in holding that sexual assault is *per se* outside the scope of employment. Rather than conducting any analysis of the alleged facts or circumstances surrounding Officer Smith's sexual abuse, the district court imposed the very kind of "fixed rule" that the Supreme Court of Alabama has long rejected. *See Edwards v. Earnest*, 89 So. 729, 730 (Ala. 1921) (citation omitted). Moreover, none of the cases relied on by the district court involve sexual abuse committed in prison settings or by law enforcement officers and are wholly inapposite. The district court's sweeping decision is not only inconsistent with Alabama state law, but also would unjustly impose insurmountable barriers to civil accountability under the FTCA for officer-committed sexual violence in Alabama.

*Second*, the United States may be held liable under the FTCA for claims alleging negligence by federal employees "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where

the act or omission occurred." 28 U.S.C. § 1346(b). Alabama state law provides that the elements of a negligence claim include a duty, a breach of that duty, causation, and damages. *Prill v. Marrone*, 23 So. 3d 1, 6 (Ala. 2009) (internal citation omitted).

Pursuant to federal statute, BOP officials owe a mandatory duty of care to individuals in their custody pursuant to federal statute. *See* 18 U.S.C. § 4042; *see also United States v. Muniz*, 374 U.S. 150, 165 (1963). PREA, its implementing regulations, and BOP policies further impose on federal officials mandatory duties of care to people incarcerated in federal facilities, including duties to report and respond to allegations of sexual abuse, to prevent further abuse from taking place, and to protect incarcerated people who report sexual abuse or harassment from retaliation. *See* 34 U.S.C. § 30301, *et seq.*; 28 C.F.R. § 115, *et seq.*

Here, the BOP independently breached its mandatory duties of care to Ms. Moore by failing to meaningfully respond to Officer Smith's known, prior sexual abuse and retaliating against those who reported sexual abuse. Indeed, BOP officials were aware that Officer Smith had sexually harassed, abused, and raped other incarcerated women at FCIA as early as July 2018. Doc. 1, at 12–13; *see also* Doc. 1-2, at 4. But despite this awareness, BOP officials allowed Officer Smith to continue to have regular, direct, and unsupervised contact with Ms. Moore and other incarcerated women. Doc. 1, at 12–13. In addition, BOP officials had a practice of retaliation against incarcerated people who reported sexual abuse, further enabling

an environment of ongoing sexual abuse. *Id.* at 4–6, 12, 15–16. As a result of officials' breach of their mandatory duties, Officer Smith sexually abused Ms. Moore, leading to significant psychological and physical trauma, depression, pain, and suffering. *Id.* at 14, 16–17; *see also* Doc. 1-1, at 4. The district court therefore erred in dismissing all of Ms. Moore's negligence claims based on the BOP's independent breaches of its duties of care to Ms. Moore.

Accordingly, Ms. Moore respectfully asks this Court to reverse the district court's decision and remand the case for further proceedings on the merits.

## ARGUMENT

I. **The Court Has Subject Matter Jurisdiction Because Officer Smith Acted Within the Scope of Employment as a Federal Correctional Officer When He Relied on His Employer-Conferred Power and Authority to Rape, Sexually Abuse, and Harass Ms. Moore.**

A. **The United States May Be Liable for Tortious Conduct of Law Enforcement Officers Acting in the Scope of Their Office or Employment.**

Under the FTCA's "law enforcement proviso," the United States may be held liable for certain intentional torts—including sexual assault—committed by a federal law enforcement officer "acting within the scope of his office and employment."[2]

---

[2] It was undisputed before the district court that Officer Smith falls within the definition of a federal law enforcement officer under the FTCA. *See* 28 U.S.C. § 2680(h) ("'[I]nvestigative or law enforcement officer' means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.").

28 U.S.C. §§ 1346(b), 2680(h). The law enforcement proviso broadly captures tortious acts committed by officers, "regardless of whether [they] are engaged in investigative or law enforcement activity, or are executing a search, seizing evidence, or making an arrest." *Millbrook*, 569 U.S. at 57. In *Millbrook*, an incarcerated person filed an FTCA action against the United States, alleging that BOP correctional officers sexually assaulted him while he was in their custody. *Id.* at 51. Reversing the district court's dismissal, the U.S. Supreme Court unanimously held that the law enforcement proviso "focuses on the *status* of persons whose conduct may be actionable"—*i.e.*, an "investigative or law enforcement officer"— and not the *types of activities* that may give rise to the liability. *Id.* at 56.

Here, the district court erred by categorically holding that sexual abuse falls outside the scope of employment as a matter of law, rather than allowing the parties to develop the record and evaluating the factual circumstances underlying Officer Smith's sexual abuse. Whether Officer Smith acted in the scope of his employment is controlled by Alabama state law, 28 U.S.C. § 1346(b), which requires a case-by-case analysis based on the facts and circumstances surrounding the tortious acts. Officer Smith acted within the scope of his employment when he relied on his employer-conferred power and authority as an on-duty and uniformed BOP correctional officer to rape, sexually abuse, and harass Ms. Moore while she was in his custody and under his supervision.

1.      **Whether Officer Smith's Sexual Abuse Was in the Scope of Employment is a Fact-Based Inquiry under Alabama State Law that is Improper to Resolve at the Motion to Dismiss Stage.**

Under Alabama state law, an employer may be liable for the intentional torts of its agents and employees when (1) "the agent's wrongful acts were in the line and scope of his employment," (2) "the acts were in furtherance of [the employer's] business," or (3) the employer "participated in, authorized, or ratified the wrongful acts." *Potts v. BE & K Constr. Co.*, 604 So. 2d 398, 400 (Ala. 1992) (citation omitted). An employee's tortious conduct may be within the line and scope of employment even when the conduct was not authorized by the employer—and even when the conduct was improper, unlawful, or expressly forbidden by the employer. *Lawler Mobile Homes, Inc. v. Tarver*, 492 So. 2d 297, 305 (Ala. 1986) (citation omitted); *see also Williams v. Hughes Moving & Storage Co.*, 578 So. 2d 1281, 1284 (Ala. 1991) (holding that employee may have acted within the scope of employment when the employee took a company vehicle home contrary to company policy expressly prohibiting such conduct); *Naber v. McCrory & Sumwalt Constr. Co.*, 393 So. 2d 973, 975–76 (Ala. 1981) (holding that an employee may have acted within the scope of employment when he committed a physical assault and battery while on duty and at his workplace).

The Supreme Court of Alabama has long recognized that the scope-of-employment inquiry requires a case-by-case analysis based on the facts and

circumstances surrounding the tortious conduct, such as "the character of the employment, its instrumentalities and agencies, and the nature of the wrongful act." *Robbins*, 123 So. at 13 (citations omitted). Further, "[w]hat acts are within the scope of employment can be determined *by no fixed rule*, the authority from the [employer] generally being gatherable from the surrounding circumstances." *Edwards*, 89 So. at 730 (citation omitted) (emphasis added). Accordingly, Alabama state courts have often reserved scope-of-employment determinations until after the parties have developed the factual record, including at trial. *See, e.g.*, *Lawler Mobile Homes*, 492 So. 2d at 305 (holding that whether an employee acted within the scope of employment presented a question for the jury at trial); *Williams*, 578 So. 2d at 1284 (same); *Naber*, 393 So. 2d at 975–76 (same); *Solmica of Gulf Coast, Inc. v. Braggs*, 232 So. 2d 638, 642–43 (Ala. 1970) (same).

Additionally, the Alabama Supreme Court has held that whether an employee was acting in the scope of his employment becomes a question for the jury when the tortious acts took place in the course of performing his employer-assigned duties:

> If there is any evidence in the record tending to show directly, or by reasonable inference, that the tortious conduct of the employee was committed while performing duties assigned to him, then it becomes a question for the jury to determine whether he was acting from personal motives having no relationship to the business of the employer.

*Lawler Mobile Homes*, 492 So. 2d at 305 (citing *Plaisance v. Yelder*, 408 So. 2d 136 (Ala. Civ. App. 1981); and *U.S. Steel Co. v. Butler*, 69 So. 2d 685 (Ala. 1953)).

Alabama courts have further held that an employee acts in the line and scope of employment "[w]hen the opportunity to commit the injury is afforded by the position of the employee and the duties he is called upon to perform in his employment," or based on "[t]he dangerous character of instrumentalities, appliances, or physical agencies that are placed by the employer in the hands or under the direction and control of the employee . . . ." *Robbins*, 123 So. at 13 (citations omitted). Where, as here, the employer authorizes an employee with certain duties, equipment, and responsibilities that carry a risk of abuse or harm— for example, the power to supervise and discipline those in federal custody—the employee acts in the scope of his employment when he uses those employer-conferred means to cause harm.

Numerous courts in other jurisdictions have similarly adopted fact-based standards and found that officer-committed sexual abuse fell within the scope of employment when the officer relied on his law enforcement authority to perpetrate the abuse. Recently, in *L.B. v. United States*, the Ninth Circuit considered whether an on-duty and uniformed federal law enforcement officer acted in the scope of his employment when he used his authority to coerce and sexually assault a woman while responding to her call for emergency assistance. 8 F.4th 868, 869–70 (9th Cir. 2021). Recognizing the significant consequences of the legal question for survivors of sexual assault committed by federal employees, the Ninth Circuit certified the

question to the Montana Supreme Court. *Id.* at 871–72. The Montana Supreme Court held that the scope-of-employment inquiry is a fact-based question. *L.B. v. United States*, 515 P.3d 818, 823–25 (Mont. 2022). It recognized that the nature of employment, in particular, was highly relevant, given that law enforcement officers' duties "include initiating nonconsensual, and at times invasive, physical contact with member of the public pursuant to law enforcement goals." *Id*. at 824 (citations omitted). Accordingly, the Montana Supreme Court held that the police officer's sexual abuse "was not so disconnected from his employment," particularly in light of the officer's reliance on his employer-conferred authority in perpetrating the assault. *Id.* at 825. *See also Red Elk ex rel. Red Elk v. United States*, 62 F.3d 1102, 1105–08 (8th Cir. 1995) (holding that a federal law enforcement officer acted in the scope of employment under South Dakota law when he sexually assaulted a person in his custody and he "had that opportunity because of his employment, the trappings of his office, and the [] policy he was to enforce").

Similarly, in *Applewhite v. City of Baton Rouge*, the Louisiana Court of Appeal found that the city government could be liable for a law enforcement officer's sexual assault of a woman picked up by the officer in his patrol car while uniformed and on duty. 380 So. 2d 119, 121 (La. Ct. App. 1979). In so holding, the court reasoned that law enforcement officers are "public servant[s] given considerable public trust and authority." *Id.* The Louisiana Court of Appeal further

stated: "[W]here excesses are committed by such officers, their employers are held to be responsible for their actions even though those actions may be somewhat removed from their usual duties." *Id.* Likewise, in *Mary M. v. City of Los Angeles*, the California Supreme Court found that a law enforcement officer may act in the scope of his employment when he misused his official authority and power to assault a civilian. 814 P.2d 1341, 1352 (Cal. 1991). In doing so, the California Supreme Court based its decision on the unique relationship between law enforcement and civilians, and the rampant opportunities for abuse as a result of that relationship. *Id.* at 1342, 1352.

In light of longstanding Alabama state law requiring a fact-based analysis in scope-of-employment cases, the district court committed clear error in applying a fixed rule that sexual assault is *per se* outside the scope of employment, without regard to the underlying facts set forth in the complaint.

> **2.  Ms. Moore Has Alleged Facts Sufficient to Show that Officer Smith Acted Within the Scope of Employment by Using His Employer-Conferred Power and Authority as Federal Correctional Officer to Rape, Sexually Abuse, and Harass Ms. Moore.**

Under the legal standards set forth by Alabama state courts, Ms. Moore has sufficiently alleged that Officer Smith acted within the line and scope of his employment when he used his employer-conferred power and authority as an on-duty and uniformed federal correctional officer to rape, sexually abuse, and harass

her while she was in his custody and under his supervision at FCIA. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that the court must assume "all the allegations in the complaint are true" at the motion to dismiss stage) (citations omitted).

First, Officer Smith was engaged in the performance of his employer-assigned duties and tasks as a federal correctional officer when he sexually abused and harassed Ms. Moore—raising an inference that he was acting in the scope of his employment. Doc. 1, at 12–13; *see also* Doc. 1-1, at 3–4; Doc. 1-2, at 3–4; *see, e.g.*, *Lawler Mobile Homes*, 492 So. 2d at 305 ("If there is any evidence in the record tending to show . . . that the tortious conduct of the employee was committed while performing duties assigned to him, then it becomes a question for the jury to determine whether he was acting from personal motives having no relationship to the business of the employer.") (citations omitted). At all times during the rape, sexual abuse, and harassment, Officer Smith was on duty, uniformed, and executing his law enforcement activities of monitoring and supervising Ms. Moore and other incarcerated women on FCIA property. Doc. 1, at 12–13; *see also* Doc. 1-1, at 3–4; Doc. 1-2, at 3–4. Indeed, every single act leading up to and following the abuse was consistent with, and inseparable from, conduct by a federal correctional officer acting in furtherance of his assigned duties and purpose—including monitoring and locating Ms. Moore on FCIA property, escorting Ms. Moore to different locations,

threatening disciplinary action, and providing supervision and management in the maintenance department. *Id.* Because the tortious acts took place on work property, during work hours, and in the course of performing assigned work duties, Officer Smith acted within the scope of his employment when he raped, sexually abused, and harassed Ms. Moore.

Additionally, Ms. Moore alleges that Officer Smith relied on the tools and instrumentalities of his position—including his employer-conferred power and authority as a correctional officer, as well as the access afforded to him by virtue of his position—to perpetrate the rape, sexual abuse, and harassment against Ms. Moore. Officer Smith, for example, weaponized his access to BOP records, including emails, telephone recordings, and other personal information, to threaten, intimidate, and coerce Ms. Moore into sexual activity and to discourage her from reporting the abuse to prison officials. Doc. 1, at 12–13. He also relied on his special access to restricted locations on federal property, including his office and FCIA facilities closets, to carry out his sexual abuse and harassment. *Id.* Officer Smith's reliance on his employer-conferred authority, as well as the access and opportunities afforded by his law enforcement position, place his actions squarely within the scope of his employment. *See Robbins*, 123 So. at 14 ("[W]hile performing the act for the benefit of the master, the master has armed the servant with power or the use of the

instrumentality, and must therefore see, at his peril, that the power and the instrumentality is not negligently used.").

Officer Smith's rape, sexual abuse, and harassment was further enabled by the unique nature of the prison setting, as well as the resulting power imbalance between incarcerated people and prison staff—other facts which the district court failed entirely to consider. Power disparities are particularly staggering in prison settings, like FCIA, where incarcerated people are at prison officials' mercy for all of their basic survival needs (including, but not limited to, food, water, medical care, clothing, and personal hygiene products), contact with children and other family members, access to vocational training and education programs, and more.[3] *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 381–82 (7th Cir. 2020) (recognizing that incarcerated women were "confined in circumstances where they depended on male guards for nearly everything in their lives. . . . With this authority and control for the guards came power and, in turn, access and opportunity to abuse it."). These facts—which directly relate to the nature of the employment and the relationship between parties—are highly relevant to the scope-of-employment inquiry.

---

[3] *See* Brenda Smith & Jaime Yarussi, *Breaking the Code of Silence: Corrections Officers' Handbook on Identifying and Addressing Sexual Misconduct* 10 (2007), https://www.prearesourcecenter.org/sites/default/files/library/breakingthecodepart1.pdf; Human Rights Watch, *All Too Familiar: Sexual Abuse of Women in U.S. State Prisons* Part I (1996), https://www.hrw.org/reports/1996/Us1.htm; Michelle VanNatta, *Conceptualizing and Stopping State Sexual Violence Against Incarcerated Women*, 37 Soc. Just. 27, 31–33 (2010).

Moreover, Officer Smith's rape, abuse, and harassment arose from and was incidental to his assigned duties and tasks as a federal correctional officer, including, but not limited to, his authority to search, frisk, detain, and even use physical contact or force, when necessary, against incarcerated people. Indeed, as discussed above, "the job duties of law enforcement officers include initiating nonconsensual, and at times invasive, physical contact" to carry out law enforcement goals and purposes. *L.B.*, 515 P.3d at 824; *see also Florence v. Bd. of Chosen Freeholders of Burlington*, 566 U.S. 318, 324 (2012) (permitting strip searches requiring incarcerated people to "lift [their] genitals, turn around, and cough in a squatting position as part of the process"); *Terry v. Ohio*, 392 U.S. 1, 17 n.13 (1968) (describing the physically invasive nature of pat-down searches). Thus, the facts set forth in the complaint, taken as true, are sufficient to establish that Officer Smith's rape, sexual abuse, and harassment fell within the scope of his employment as a correctional officer.

**B.    The District Court Erred by Holding that Sexual Assault is Per Se Outside the Scope of Employment Without Allowing a Fact-Finder to Consider the Underlying Facts in Accordance with Alabama Law.**

Contrary to longstanding Alabama state law, the district court erroneously held that sexual assault is categorically outside of the scope of employment, regardless of the facts in this case. In doing so, the district court failed to consider or engage with *any* of the many facts surrounding Officer Smith's abuse and harassment, summarily imposing a *per se* rule. This blanket approach is precisely

the kind of "fixed rule" that the Alabama Supreme Court has rejected. *See Edwards*, 89 So. at 730. Moreover, such a *per se* rule is a stark deviation from the very Alabama state cases on which the district court relied—all of which employed a thorough analysis of the facts and circumstances surrounding the alleged tortious conduct *after* the parties had an opportunity to conduct discovery. *See E. Ala. Behav. Med., P.C. v. Chancey*, 883 So. 2d 162, 166–69 (Ala. 2003) (applying fact-based analysis to the scope-of-employment inquiry following jury trial); *Doe v. Swift*, 570 So. 2d 1209, 1212 (Ala. 1990) (same); *Hendley v. Springhill Mem'l Hosp.*, 575 So. 2d 547, 548–49 (Ala. 1990) (applying fact-based analysis to the scope-of-employment inquiry at the summary judgment stage following argument and submission of evidentiary materials).

Moreover, the district court's holding relied entirely on cases that are wholly inapposite and do not involve sexual abuse committed in the prison setting or by law enforcement officers. In *Chancey*, for example, the Alabama Supreme Court held that a psychologist's sexual activity with a patient was outside the scope of employment based on the underlying facts, including that the psychologist initiated a relationship with her client *outside of the workplace* and *after work hours*, and that the sexual activity occurred *after* the termination of the professional relationship. 883 So. 2d at 166–69. By contrast, Officer Smith's sexual abuse occurred exclusively on FCIA property, during work hours, against an incarcerated woman in

his custody and under his supervision, and while he was in uniform, on duty, and engaged in his roles and responsibilities as a BOP officer.

Similarly, in *Hendley*, the Alabama Supreme Court considered whether an independent contractor's sexual abuse of a patient in a physical therapy office was outside the scope of employment at the summary judgment stage. 575 So. 2d at 548–51. After reviewing the submission of evidentiary materials, including testimony by witnesses, and hearing argument, the Alabama Supreme Court found that the unauthorized vaginal examination—perpetrated by a private vendor contracted only to monitor the office's electrode therapy equipment—was a "marked and unusual" deviation from his assigned purpose (*i.e.*, monitoring the electrode therapy equipment). *Id.* at 550–51. In contrast, Officer Smith's rape, sexual abuse, and harassment directly arose from and was incidental to his assigned law enforcement authority, duties, and purpose as a correctional officer. Specifically, Officer Smith was charged with the custody and supervision of Ms. Moore and, in turn, weaponized that purpose and authority to carry out the abuse—including locating and escorting her to his office and other locations within the prison, detaining her, and threatening and coercing her through his employer-conferred position of authority. Moreover, unlike the independent contractor in *Hendley*—who was authorized only to monitor equipment and not to physically touch patients—Officer Smith's authority as a correctional officer included the ability to search, detain, and

use nonconsensual and invasive physical contact against Ms. Moore and others in his custody when necessary. Thus, the context and nature of Officer Smith's employment and the prison setting render *Hendley* inapposite.

Finally, the Alabama Supreme Court's decision in *Swift*, regarding a psychologist's sexual assault of a patient, further confirms that the surrounding facts, including the context and nature of the relationship, are particularly relevant in cases involving sexual abuse. 570 So. 2d at 1209. The Alabama Supreme Court recognized that certain facts, such as "an abuse of a trusting dependency relationship," may put sexual abuse within the scope of employment. *Id.* at 1213. Based on the particular facts of the case before it, including the patient's own testimony and the short duration of the psychologist-patient relationship, the Alabama Supreme Court found that the alleged abuse did not result from the power dynamics between the parties and held the psychologist's abuse in that case fell outside his scope of employment. *Id.* at 1210–13. Applied here, the district court should have considered the facts alleged in the complaint—including the context and nature of the prison setting and resulting power imbalance, and that the opportunity to commit the abuse was afforded to Officer Smith by virtue of those facts. When federal law enforcement officers abuse their authority and power to assault those in their custody and under their supervision, such conduct falls within the line and scope of their employment under Alabama state law. Here, the district court failed entirely to consider any of

the factual circumstances set forth in the complaint, as required under Alabama state law, and the many ways in which Officer Smith's abuse was predicated upon and incidental to his authority as a BOP officer. Moreover, the district court's imposition of a *per se* rule would effectively immunize all federal law enforcement officers who sexually assault civilians in their custody and under their supervision. Such a blanket rule cannot be reconciled with the Alabama Supreme Court's precedent and would impose unreasonable and unjust barriers for sexual abuse survivors seeking relief under the FTCA.

## II. The Court Has Subject Matter Jurisdiction Because the Federal Tort Claims Act Waives Sovereign Immunity for Ms. Moore's Negligence Claims.

Because Officer Smith acted in the scope of his employment when he sexually abused and harassed Ms. Moore, the district court erred in dismissing Ms. Moore's negligence claims. In any case, the United States is independently liable for the negligent acts and omissions of its federal officials and the resulting breaches of its mandatory duties to Ms. Moore, and her case should be allowed to proceed on this ground alone. Pursuant to statutes, regulations, and BOP policies, the BOP owes mandatory duties of care to Ms. Moore and other people incarcerated in federal facilities, including duties to protect the health and safety of those in custody, to report and respond to sexual abuse, and to protect against retaliation those who report

abuse and misconduct. BOP officials breached all of these duties through negligent acts and omissions, resulting in Officer Smith's sexual abuse and rape of Ms. Moore.

**A.** **The Bureau of Prisons Owes Independent Duties of Care to Ms. Moore and Other Incarcerated People.**

As discussed above, the FTCA waives the federal government's sovereign immunity for torts committed by its employees. 28 U.S.C. § 1346(b). Relevant to Ms. Moore's negligence claims, the FTCA gives federal courts jurisdiction over claims alleging negligence by federal employees "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* § 1346(b)(1). Under Alabama state law, the "elements of a negligence claim are a duty, a breach of that duty, causation, and damage." *Prill,* 23 So. 3d at 6 (quoting *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 679 (Ala. 2001)).

Generally, plaintiffs must identify a state law duty to support a negligence claim under the FTCA. *See Zelaya v. United States*, 781 F.3d 1315, 1325 (11th Cir. 2015). But plaintiffs incarcerated by the federal government are on different footing: "[T]he duty of care owed by the Bureau of Prisons to federal prisoners is fixed by

18 U.S.C. § 4042 ["Section 4042"], independent of an inconsistent state rule." *Muniz*, 374 U.S. at 164–65.[4]

Section 4042 imposes on the BOP a duty to protect the health and safety of those in its custody. 18 U.S.C. § 4042. The BOP also has a statutory obligation under PREA to enforce a "zero-tolerance standard" for staff sexual abuse of incarcerated people. 34 U.S.C. § 30302(1); *see also* 34 U.S.C. § 30307(b) (providing that the national PREA Standards, codified at 28 C.F.R. § 115 *et seq.*, "shall apply to the Federal Bureau of Prisons immediately upon adoption of the final rule").

BOP policies and the PREA Standards further elaborate on these duties— setting forth mandatory requirements for federal officials to report and respond to allegations of sexual abuse, and prohibiting retaliation against incarcerated people who report sexual abuse. These policies—and the duties they create—apply to all forms of sexual abuse and harassment, whether perpetrated by staff, contractors, volunteers, or other incarcerated people. *See* Doc. 1, at 10; 28 C.F.R. § 115.6 (defining "sexual abuse" to include sexual abuse "by another inmate, detainee, or resident" and sexual abuse "by a staff member, contractor, or volunteer").

---

[4] Even if the Court were to look to state law, Alabama state law recognizes that prison officials owe a duty of care to the people they incarcerate, *Iriele v. Griffin*, No. 7:20-CV-383-LSC, 2023 WL 8439743, at *14 (N.D. Ala. Dec. 5, 2023), as the United States conceded before the district court, *see* Doc. 10, at 10 (citing *Patton v. Thompson*, 958 So. 2d 303, 310 (Ala. 2006)).

First, BOP policies mandate that "[a]ll staff must report information concerning incidents or possible incidents of sexual abuse or sexual harassment . . . ." Doc. 1, at 10–11 (quoting Federal Bureau of Prisons, Program Statement 5324.12, *Sexually Abusive Behavior Prevention and Intervention Program*, ("BOP Program Statement 5324.12")); Doc. 1, at 8–9 (describing requirements of Federal Bureau of Prisons Program Statement 3420.11, *Standards of Employee Conduct* ("BOP Program Statement 3420.11"), which prohibits sexual contact with incarcerated people and mandates that employees report "any violation, appearance of a violation, or attempted violation" of BOP policy or any law, rule, or regulation). The PREA Standards similarly require immediate reporting of any knowledge or suspicion of sexual abuse. *See* 28 C.F.R. § 115.61 ("The agency shall require all staff to report immediately and according to agency policy any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility.").

Second, BOP policies and the PREA Standards further mandate that staff must meaningfully respond to allegations of sexual abuse with investigations and discipline, and must prevent further abuse from taking place. BOP policies provide that "[n]o employee shall engage in, *or allow another person to engage in*, sexual behavior with an inmate." Doc. 1, at 9 (emphasis added) (quoting BOP Program Statement 3420.11, at 7); *see also* 28 C.F.R. § 115.62 ("When an agency learns that

an inmate is subject to a substantial risk of imminent sexual abuse, it shall take immediate action to protect the inmate."). BOP's response to allegations of sexual abuse requires "[a]ll allegations" to be "thoroughly investigated." Doc. 1, at 10 (quoting BOP Program Statement 3420.11). BOP is also required to discipline the perpetrators of such abuse. *See* 28 C.F.R. §§ 115.76, 115.77, 115.78. Employees are subject to administrative action up to and including removal for sexual contact with incarcerated people. Doc. 1, at 8–9 (summarizing BOP Program Statement 3420.11); *see also* 28 C.F.R. § 115.76 ("Staff shall be subject to disciplinary sanctions up to and including termination for violating agency sexual abuse or sexual harassment policies.").

Third, the PREA Standards mandate that all incarcerated people who report sexual abuse or sexual harassment shall be protected from retaliation through various measures. 28 C.F.R. § 115.67(a) ("The agency shall establish a policy to protect all inmates . . . who report sexual abuse or sexual harassment . . . and shall designate which staff members or departments are charged with monitoring retaliation."); 28 C.F.R. § 115.67(b) ("The agency shall employ multiple protection measures, such as . . . removal of alleged staff . . . abusers from contact with victims . . . ."). Together, these policies and regulations set forth BOP's independent mandatory duties of care to Ms. Moore and other people incarcerated in federal facilities.

### B. The Bureau of Prisons Independently Breached its Duties to Ms. Moore by Failing to Respond to Sexual Abuse and Retaliating Against Those Who Reported Abuse and Misconduct.

The BOP breached its statutory duties of care to report and respond to sexual abuse, and to protect incarcerated people from retaliation. As set forth in the complaint, BOP officials were aware that Officer Smith had sexually harassed, abused, and raped other incarcerated women as early as 2018. *See* Doc. 1, at 12. Yet despite this awareness, BOP officials failed to report or meaningfully respond to this abuse, as required by statute and policy.

Instead, officials allowed Officer Smith to maintain a position in which he had regular, direct, and unsupervised contact with incarcerated women. *See id.* at 12–13. In particular, BOP officials allowed Officer Smith to have unrestricted and unsupervised contact with Ms. Moore, and permitted him to routinely escort her to unmonitored portions of the facility, including his office and facility closets. *Id.* BOP's failure to address or respond Officer Smith's sexual abuse, despite their knowledge, was part of a larger systemic practice of tolerating and/or ignoring staff sexual abuse in its facilities. *Id.* at 5–6. *Cf. Calif. Coal. for Women Prisoners v. United States*, 723 F. Supp. 3d 712, 734 (N.D. Cal. 2024) (finding it undisputed that women in BOP custody were "subjected to egregious, systematic sexual abuse" and that facility staff "fostered a corrupt culture of misconduct and impunity").

Further, BOP officials employed a practice of retaliation against incarcerated people who reported sexual abuse—including by transferring them to different facilities, imposing disciplinary write-ups or disciplinary segregation, revoking early release rights or work privileges, and interfering with access to programming—designed to stifle reports and perpetuate the culture of abuse. Doc. 1, at 12.

As a result of BOP officials' breach of their statutory duties to report and respond to Officer Smith's 2018 abuse of other incarcerated women and to prevent retaliation against people who report sexual abuse, Officer Smith repeatedly sexually abused Ms. Moore in 2019 and again in 2021. *Id.* at 1, 13–17. BOP officials' negligence caused Ms. Moore to suffer extensive physical and psychological trauma, depression, pain and suffering. *Id.* at 14. Ms. Moore has thus sufficiently stated an independent negligence claim against the BOP. *See, e.g.*, *Cardenas v. United States*, No. 4:23-CV-00745-P, 2023 WL 7634436, at *3 (N.D. Tex. Nov. 15, 2023) (holding that allegations that officials' breaches of PREA and the BOP's Standards of Employee Conduct leading to the plaintiff's sexual assault "support a relatively straightforward negligence claim"); *Herrera v. United States*, No. 20-cv-10206 (PKC), 2022 WL 902090, at *10 (S.D.N.Y. Mar. 27, 2022) (relying on BOP policy and holding that for jurisdictional purposes, plaintiffs adequately alleged under the FTCA that BOP defendants "violated the BOP's specific policy mandate that knowledge and even suspicions of sexual abuse be immediately reported").

The district court therefore erred when it relied on the plurality opinion in *United States v. Shearer*, 473 U.S. 52 (1985), to hold that Ms. Moore's negligence claims were barred by the FTCA's intentional tort exception because "they arise out of Officer Smith's intentional tort." Doc. 17, at 7. Indeed, the Supreme Court's subsequent decision in *Sheridan v. United States*, 487 U.S. 392 (1988), made clear that "it is both settled and undisputed that in at least some situations the fact that an injury was directly caused by an assault or battery will not preclude liability against the Government for negligently allowing the assault to occur." *Id.* at 398. In *Sheridan*, as here, the government assumed an independent duty by "voluntarily adopting regulations" and "requir[ing] all personnel to report" violations of those regulations. *Id.* at 401. And in *Sheridan*, as here, "the negligence of other Government employees" who violated those regulations and "allowed a foreseeable assault and battery to occur may furnish a basis for Government liability that is entirely independent of [the assailant's] employment status." *Id.*

The district court's reliance on *Alvarez v. United States*, 862 F.3d 1297 (11th Cir. 2017), is similarly misplaced. *Alvarez* considered claims against an intentional tortfeasor and negligent agency officials. But that is where its relevance ends. First, the district court relied on *Alvarez*'s discussion of a negligence claim against the intentional tortfeasor—not the negligent breach of an independent statutory duty by other government actors, as here. *See* Doc. 17, at 10 (citing *Alvarez*, 862 F.3d at

1302). In rejecting the negligence claim against the intentional tortfeasor, *Alvarez* examined the conduct underlying the plaintiff's claims and determined that as a factual matter, the conduct sounded not in negligence but in intentional misrepresentation. The intentional misrepresentations—which fell under the FTCA's intentional tort exception—therefore constituted "the governmental conduct that is essential to the plaintiff[s'] cause of action." 862 F.3d at 1302–03 (quoting *Zelaya*, 781 F.3d at 1333). Second, when addressing the negligence claims brought against other government actors, the *Alvarez* Court again looked to the facts and determined that the relevant conduct included communications or non-communications by agency employees—acts that independently fell within the FTCA's misrepresentation exception and therefore were barred by the FTCA. *Alvarez*, 862 F.3d at 1305. This rationale is again inapplicable here, where the conduct underlying Ms. Moore's negligence claims—the failure to report or respond to sexual abuse, and the failure to prevent retaliation—do not independently fall into any FTCA exception.[5]

---

[5] The United States did not take the position in the district court that the FTCA's discretionary function exception shields it from liability for the negligence claims in this case. *See generally*, Doc. 10. Nor could it. The complaint demonstrates that BOP officials' actions were "controlled by mandatory statutes or regulations." *United States v. Gaubert*, 499 U.S. 315, 328 (1991). Because officials "violate[d] the mandatory regulation," there is "no shelter from liability because there [was] no room for choice and the action [was] contrary to policy." *Id.* at 324.

# CONCLUSION

For the above reasons, this Court should reverse the district court's decision and remand the case for further proceedings on the merits.

Dated: April 7, 2025

Respectfully submitted,

/s/ Linda S. Morris
Linda S. Morris*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
*admitted to the State of Maryland
125 Broad Street – 18th Floor
New York, NY 10004
(212) 549-2500
LindaM1@aclu.org

Jennifer A. Wedekind
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street NW
Washington, DC 20005
(202) 548-6610
jwedekind@aclu.org

Counsel for Plaintiff-Appellant

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 8,392 words.

2. This document also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: April 7, 2025                    Respectfully submitted,

                                        */s/ Linda S. Morris*
                                        Linda S. Morris

                                        *Attorney for Plaintiff-Appellant*

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically with the Clerk of the Court through the appellate CM/ECF system on April 7, 2025. I further certify that all parties required to be served have been served.

Dated: April 7, 2025                    Respectfully submitted,

                                        */s/ Linda S. Morris*
                                        Linda S. Morris

                                        *Attorney for Plaintiff-Appellant*